CARMACK et al., Commissioners, versus MASTERSON.

1. Where an action was brought by commissioners of a 16th section, to recover a forfeiture, incurred by one, who failed to comply with a contract for leasing certain lots in said section—held—

1st. That a contract, for such leasing, was embraced by the statute of frauds, and required a memorandum, in writing.

2d. That a memorandum, made by a clerk, appointed by the commissioners, to attend said sale, was not sufficient, under the statute of frauds.

This case was originally the judgment of a justice of the peace, of Lauderdale county; and was taken into the County court, on *certiorari*.

In the trial, in that court, the plaintiffs in error, school commissioners of a 16th section, declared upon a contract, for the leasing of certain lots, being part of a 16th section, which, upon public sale, of such leaseholds, were bid off, by the defendant: and the plaintiffs averred, that the said defendant, having failed to comply with the terms and conditions of that sale, the leaseholds were again offered for sale—whereby a deficiency, between the bids of the defendant, and the last purchaser, had accrued. To recover this deficiency the action had been commenced.

On the trial below, the plaintiffs produced one of the commissioners as a witness; and, also, offered to prove, by the clerk, appointed by the commissioners, to keep accounts of the sale, the particular contract.

The court below, decided—first, that the commissioner was incompetent—second, that parol evidence was not admissible, to establish the contract; and,

third, that a memorandum, kept by said clerk, at the time of said sale, was not proper testimony.

*W. B. Martin,* for plaintiff—*Anderson, contra.*

TAYLOR, J.—The principal question, in this case, is, whether the contract is valid, under the statute of frauds.

It is contended, by the plaintiffs in error—

1st. That the statute of frauds does not embrace the case.

2d. But, if it does, here is a sufficient memorandum in writing.

To show, that the cause of action is not embraced by the statute, it is argued, that the suit is not brought, on a contract for lands; but, for failing to enter into such contract, according to agreement.— That, the defendant, having bid off the land, was bound to comply with the terms of the sale; or, upon failing to do so, to pay the loss sustained by a second sale: and, that he is sued, to recover the amount of the deficiency of the second sale, under the sum, for which the lots were knocked off to him, at the first.—That, this does not come within the mischief, intended to be remedied.

The words of the act are, " Any contract, for the sale of lands, tenements, or hereditaments, or the making any lease thereof, for a larger term than one year."

To enable the plaintiffs to recover, the defendant must have been bound, by the contract: it is only upon his obligation, to fulfil it, that he can be liable to an action. It is for not doing, what, in law, he

CARMACK, et al. *vs.* MASTERSON.

was bound to do, that he can be called upon to re-
munerate the plaintiffs, in damages.

The case of *Simon* vs. *Motivos*,[a] is in point.—[a] 3 Burr.
The defendant, in that case, bought the goods, at    1921.
auction, but neglected to take them away. They
were afterwards sold, at considerable loss; and the
suit was brought, to recover the difference. The de-
cision turned entirely upon, whether the statute of
frauds would prevent a recovery.

The act 29 Charles 2, c. 3, is more comprehensive
than ours—rendering void, all sales of goods, &c. to
a greater value than £10, unless the agreement be
in writing, &c. It was admitted, by all the judges,
that the contract must be binding under the statute,
or the suit could not be maintained; but, it was de-
termined, that, in the particular case, there was a suffi-
cient memorandum in writing.

The case of *Walker* vs. *Constable*,[b] is also analo-[b] Esp. R
gous to this. The declaration stated, that the plain-  659
tiff and defendant had contracted for the sale of certain
premises of the defendant, and paid thereon a deposit of
£850 and reciting that the parties had agreed to put an
end to the contract, and to receive back the purchase
money; averred, that the defendant undertook to pay
interest for the deposit money, &c. The plaintiff
was proceeding to prove his case by parol, which
was objected to. *Eyre*, Chief Justice, decided that
the plaintiff could not proceed without the produc-
tion of his contract; that the foundation of the ac-
tion was the sale of the premises, which, to be
valid, should have been in writing. The Chief Jus-
tice proceeded to say; "the plaintiffs' counsel further
rely, that the contract being abandoned, they may
go into parol evidence of it, but its existence, and the

terms of it, must be proved, before it can be proved to be abandoned ; and upon that, it is sufficient to say, that, being in writing, the instrument itself must be produced, and parol evidence of it is inadmissible."

In the next term, there was a motion to set the non-suit aside, but the court agreed in opinion with the Chief Justice.

The language of the judge in that case may be used in this. The existence and terms of the contract must be proved, before it can be shown that the defendants failed to comply with it.

The case, therefore, is embraced by the statute of frauds.

To comply with the statute, by producing a memorandum in writing, the plaintiffs offered in evidence, in the court below, a paper headed "lots forfeited," following which words were, " No. 11, $142 25, No. 13, $60 25, No. 14, $38, No. 45, $6 75, No. 20, $7 25, No. 53, $2 per acre, No. 54, $1 33 per acre, John Springer, No. 11, $100 6¼, Daniel Wilcoxon, No. 13, $17 6¼, Col. Masterson, No. 14, $11, &c., Col. Masterson, No. 54, $2 26 per acre ; and proved by one Sessums, that he was appointed Clerk of the sale by said Carmack, and that he had kept that memorandum, and it was in his handwriting, together with said Sessum's account of the bid by the defendant at said sale."

The court refused to permit the paper to be read to the jury, or to suffer any parol evidence to be introduced to support the declaration.

The counsel for the plaintiffs has contended, that this was a sufficient memorandum, within the statute, when explained, as it might well be, and that

the clerk of the sale must be considered as an agent for both parties.

It is not intended to question those cases in which an auctioneer has been determined to be · the agent of both the contracting parties, but it is believed the doctrine has never been carried further than this.— In *Coles* vs. *Trecothick*,[a] it was determined that an auctioneer's clerk can not, without a special authority, act as agent for his employers, so as to satisfy the words of the statute.   Here the memorandum was not made by the auctioneer, but by a clerk appointed by one of the plaintiffs: he certainly cannot be considered more entitled to the character of an agent for the defendant than he would have been if appointed by the auctioneer.

But the memorandum itself is without sufficient certainty.   Even admitting it to contain, in some instances, statements of the numbers of lots sold, the price sold for, and the purchasers, there is no certain mode of ascertaining who was the purchaser of the different lots, nor whether the defendant purchased the lots immediately preceding or succeeding his name.   There are not even punctuations made in the memorandum, to aid in arriving at a conclusion; and to many of the numbers and prices no names are annexed, so that reliance has, at last, to be placed almost exclusively on the parol testimony of Sessums.

The case of *Hinde* vs. *Whitehouse and Galan*, was somewhat similar to this, though there, the memorandum was more clear and distinct than the one before us.   At the time of the sale, the auctioneer's printed catalogue was before him, and he wrote down in the same line with the lot purchased, the name

a 9 Ves. 234

CARMACK, et al. *vs.* MASTERSON.

of the highest bidder, or purchaser, and the price bid. Lord *Ellenborough*, in delivering the opinion of the court, says, "supposing the auctioneer, or broker for sale, to be the agent of both parties, the question then is, has he made a memorandum of the bargain in this case? And it appears to me he has not. The minute made on the catalogue of sale, which is not annexed to the conditions of sale, nor has any internal reference thereto, by 'context or the like, is a mere memorandum of the name of a person, whom, perhaps, we may intend to be the purchaser; and of the quantity and price of the goods, which we may, perhaps, on the foot of such memorandum, also intend to have been sold to the person so named in the catalogue. But in treating it as such memorandum throughout, we must intend also, (contrary to the fact,) that the goods were sold for ready money."

This reasoning applies with two fold force to the case before us. It does not appear that there were any conditions of sale, nor is there any thing to aid this naked and unsatisfactory paper.

The judgment must be affirmed.